UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

AMY SHACKLEFORD                                                                                  PLAINTIFF

v.                                                                                                                            CIVIL ACTION NO. 3:01CV-743-S

OFFICER AARON GUTERMUTH, ET AL.
In his Individual and Official Capacities
as an Oldham County Police Officer                                                          DEFENDANT

### **MEMORANDUM OPINION**

This matter is before the court on motion by the defendants, Officer Aaron Gutermuth, in his individual and official capacities as an Oldham County Police Officer, and the Oldham County Police Department, for summary judgment. This case involves the plaintiff's claims that Officer Gutermuth violated her federal constitutional rights and also claims under Kentucky law for assault, battery, false arrest, false imprisonment, and malicious prosecution. For the reasons set forth below, the defendant's motion will be **GRANTED** on all claims.

FACTS

Just after 11:00 p.m. on July 20, 2001, the plaintiff ("Ms. Shackleford") was driving along KY 22 in Oldham County, Kentucky. The defendant ("Officer Gutermuth") observed Ms. Shackleford's car cross the center line. Officer Gutermuth then activated the camera in his squad car. This recording reveals that she crossed the center line several more times and swerved into the lane of oncoming traffic when making a wide right turn. Officer Gutermuth then made the traffic stop.

When he approached her car, Ms. Shackleford told him that she was out for a drive because she was feeling depressed. Officer Gutermuth noted that her eyes were dilated and not reactive to light, for which she provided no explanation. She denied that she had been drinking when Officer Gutermuth inquired about alcohol use. A preliminary breath test later confirmed that she had not been consuming alcohol.

Ms. Shackleford explained that she suffered from multiple sclerosis and that she took prescription medication for this condition. When Officer Gutermuth questioned her about these, she responded that she regularly takes several medications, none of which affect her ability to operate her vehicle. However, she also stated that she had taken one pill that evening which she did not normally use. Ms. Shackleford was unable to identify this medication. Officer Gutermuth expressed concern that Ms. Shackleford was under the influence of her prescription medications. To confirm this, he conducted a series of field sobriety tests. Ms. Shackleford explained that her multiple sclerosis would likely prevent her from successfully performing these tests. Officer Gutermuth administered three different tests: the one-leg stand test, the walk-and-turn test, and the horizontal gaze nystagmus test. Ms. Shackleford failed all three. Officer Gutermuth then placed her under arrest, charging her with Driving under the Influence (DUI) of Drugs in violation of KRS 189A.010(5)(a). He handcuffed Ms. Shackleford and assisted her into the squad car.

Officer Gutermuth then drove Ms. Shackleford to Baptist Hospital Northeast in LaGrange, Kentucky where she was given a blood test. She tested negative for all substances included in the routine drug screen. The DUI charge was dismissed in Oldham County District Court on November 8, 2001. Three days later, Officer Gutermuth, who was unaware of this dismissal, filed another criminal complaint alleging that she "failed to operate her motor vehicle in a careful manner . . ." On November 27, 2001, the Oldham County District Court charged Ms. Shackleford with Careless Driving in violation of KRS 189.290(1). She was acquitted on November 13, 2003.

Plaintiff instituted the present lawsuit on November 20, 2001 in Oldham County Circuit Court. The defendants then removed her complaint to this court. On August 30, 2002, this court granted a motion to dismiss submitted by the defendant and denied the plaintiff's motion to amend. On April 19, 2001, the court of appeals reversed and remanded this case for further proceedings. This court then granted the plaintiff's motion to amend her complaint and the parties later agreed to the filing of a second amended complaint. The plaintiff claims that Officer Gutermuth violated

- 2 -

her federal constitutional rights and also asserts claims under Kentucky law for assault, battery, false arrest, false imprisonment, and malicious prosecution. She seeks compensatory and punitive damages, as well as injunctive relief. The defendants seek summary judgment on all claims.

## DISCUSSION

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

### *A. Ms. Shackleford's ADA claim is not time barred.*

The defendants' urge this court to dismiss Ms. Shackleford's claim that they violated her rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Because the ADA does not specify its own statute of limitations period, the court must borrow one from the most analogous state cause of action. *See Runyon v. McCrary*, 427 U.S. 160, 180-182, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Both parties agree that the appropriate choice is the statute of limitations for

a personal injury action, which is one year in Kentucky. Therefore, Ms. Shackleford had one year after the time of her injury in which to file suit under the ADA. Her cause of action accrued on the date of her arrest, July 20, 2001, which means the statute of limitations expired on July 20, 2002.

Because Ms. Shackleford did not submit her ADA claim until April 28, 2004, the defendants claim that her ADA claim is time barred. However, Ms. Shackleford asked this court to allow her the opportunity to amend her complaint for purposes of adding this ADA claim. She made this request in February of 2002, well within the statute of limitations time period. The court denied her request to amend her complaint because the criminal complaint was still pending in the Oldham County courts. By the time the court of appeals addressed the matter, the charge had already been dismissed and the court of appeals therefore reversed and remanded to allow this court to address the merits of the instant case. Because Ms. Shackleford attempted to assert her ADA claim within the statute of limitations period, her claim is not time barred.

### *B. Ms. Shackleford is not a qualified individual with a disability.*

To establish a claim under the ADA, a plaintiff must first prove that she is a member of the class of persons intended to be protected under the act. Specifically, Ms. Shackleford must demonstrate that she is a "qualified individual with a disability." *See* 42 U.S.C. §12132. The parties do not dispute that Ms. Shackleford suffers from multiple sclerosis. However, "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002). To qualify as disabling, the impairment must *substantially limit* one or more major life activities. As an initial matter, it is necessary to understand what is meant by the term "major life activity." The EEOC regulations shed light on this by stating:

> "major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not

> exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching.

29 C.F.R. pt. 1630, App. §1630.2(I) (2001). Ms. Shackleford asserts that her disability causes spasms and numbness in her hands, creates dizziness and constant problems with her balance, and negatively affects her short term memory. However, she has failed to provide any evidence that the impairment *substantially limits* her in the performance of any of these activities.

"[I]t is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures--both positive and negative--must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).[1] The record suggests that when medication or other corrective measures were applied, Ms. Shackleford's impairments were not substantially limiting. In fact, Ms. Shackleford's own brief concedes that she is "presently responding well to medications." She is able to function well, care for herself and maintain steady employment as an elementary school teacher. Her doctor also opined that her medications did not affect her ability to drive. Because Ms. Shackleford is not substantially limited in a major life activity, her ADA claims fail as a matter of law.[2]

---

[1] The plaintiff cites *Gilday v. Mecosta County*, 124 F.3d 760 (6th Cir. 1997) in support of her position that her multiple sclerosis should be evaluated in its uncontrolled state. The *Gilday* opinion itself recognizes a split of authority on this issue. This court, therefore, relies instead upon the Supreme Court's reasoning in the *Sutton* case, which postdates *Gilday*.

[2] Even if Ms. Shackleford was a member of the class protected by the ADA, Officer Gutermuth's first consideration was ensuring the safety of other drivers on the road. *See McCray v. City of Dothan,* 169 F.Supp.2d 1260, 1275 (M.D. Ala. 2001) (overruled on other grounds) ("[P]olice investigative activities are government programs, but it is *per se* reasonable to disregard a suspect's disability until overriding concerns of public safety are ensured."). Officer Gutermuth's video revealed that Ms. Shackleford repeatedly crossed the center line towards the oncoming traffic lane and that she failed all three field sobriety tests. Under these circumstances, Officer Gutermuth certainly had probable cause to make the stop. His reasonable belief that she was a hazard to other drivers provides further justification for taking her into custody in accordance with his duty to ensure the public safety.

### *C. Ms. Shackleford's federal constitutional rights were not violated.*

Ms. Shackleford claims that Officer Gutermuth violated her federal constitutional rights. Specifically, she asserts a claim under 42 U.S.C. §1983, maintaining that Officer Gutermuth violated her rights guaranteed by the Fourth Amendment. She alleges that he arrested her without probable cause and subsequently maliciously prosecuted her for careless driving.

An officer may arrest a suspect without a warrant if there is probable cause to believe the suspect has committed or is committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo,* 443 U.S. 31, 36, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). In the instant case, probable cause clearly existed for Ms. Shackleford's detention and arrest. The video from Officer Gutermuth's camera showed that Ms. Shackleford's crossed the center line multiple times and that she swerved into oncoming traffic as she made a wide right hand turn. When questioned by Officer Gutermuth, she stated that she was very upset, admitted that she was taking prescription medications and specifically noted that she had taken one drug that evening that she did not ordinarily use. Officer Gutermuth also noted that her eyes were dilated and were not reactive to light. She failed all three field sobriety tests he administered. Based on these facts and circumstances, Officer Gutermuth's concern that she was impaired by the medications was reasonable. He certainly had probable cause to believe that she was committing the offenses of driving under the influence of drugs and careless driving. In fact, he had a responsibility to keep her off the roads so as to prevent her from continuing her dangerous driving. As a matter of law, the existence of probable cause defeats Ms. Shackleford's claims for violation of her federal constitutional rights because Officer Gutermuth lawfully arrested her.

### *D. Ms. Shackleford's §1983 claims against the Oldham County Police Department fail as a matter of law.*

Ms. Shackleford bases her §1983 claims against the Oldham County Police Department upon her allegations that Officer Gutermuth, acting under color of state law, deprived her of her constitutional rights. For the reasons mentioned in Part C of this opinion, Officer Gutermuth did not violate her constitutional rights and, therefore, this claim also must fail.

Additionally, Ms. Shackleford bases her §1983 claim upon on assertion that Oldham County has failed to appropriately train and supervise its police officers with regard to individuals with disabilities. To succeed on this claim, Ms. Shackleford must establish that the failure to train amounts to deliberate indifference to the rights of citizens with whom the police officers interact. *See City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The Supreme Court has ruled that an allegation of "failure to train" can form the basis for §1983 liability only where the municipality's policies are "the moving force [behind] the constitutional violation." *Id.* at 389 (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Again, the court has found no constitutional violation; but, even if there were a constitutional violation, Ms. Shackleford has failed to establish that Oldham County's failure to train its officers rises to the level of being a policy or custom.

Ms. Shackleford's brief indicates that Officer Gutermuth stated that his training with regard to disabled persons was very minimal. Furthermore, he stated that he was unaware of alternative field sobriety tests to administer to a person in a wheelchair. This testimony, standing alone, is simply insufficient to establish a policy or custom of discrimination against disabled persons by the Oldham County Police Department. It certainly does not demonstrate that the Oldham County Police Department acted with deliberate indifference to the rights of disabled persons. Ms. Shackleford simply has not met the heavy burden required to establish that the alleged failure to

train "reflects a 'deliberate' or 'conscious' choice by [Oldham County Police Department]." *Id.* at 389.

### *E. Because Officer Gutermuth had probable cause, Ms. Shackleford's state law claims fail as a matter of law.*

Ms. Shackleford makes several state law claims, over which the court has supplemental jurisdiction. *See* 28 U.S.C. §1367. Specifically, she seeks relief for assault, battery, false arrest, false imprisonment, and malicious prosecution. An "officer may use such force as was necessary or reasonably appeared to him to be necessary to take into custody the person he is seeking to arrest." *City of Lexington v. Gray,* 499 S.W.2d 72, 74 (Ky. 1973). As already discussed, Officer Gutermuth lawfully arrested Ms. Shackleford. Officer Gutermuth has satisfied his burden of proving that "he had reasonable grounds to believe and in good faith believed" that Ms. Shackleford committed the offenses for which she was charged. *See id.* The record demonstrates that he clearly had probable cause to believe that she was committing either the crime of DUI or careless driving based on the facts and circumstances on the night in question. He asserted only minimal force upon Ms. Shackleford; that is, he handcuffed her, searched her person, and assisted her into his squad car. This minimal contact was privileged under Kentucky law, as it was incident to a lawful arrest. Therefore, the claims for assault and battery must fail.

As already noted, Officer Gutermuth could not have committed the tort of false arrest because he had adequate probable cause when he arrested her. Furthermore, Ms. Shackleford's false imprisonment claim, which is indistinguishable from false arrest under Kentucky law, must fail. *See Lexington-Fayette Urban County Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. App. 1977). Officer Gutermuth was privileged to detain Ms. Shackleford because he had probable cause to arrest her for the above-mentioned offenses.

Ms. Shackleford also asserts two claims of malicious prosecution, the first for the DUI charge and the second for the careless driving charge. Under Kentucky law there are six elements

- 8 -

.

which must be established to prevail on the claim of malicious prosecution, one of which is lack of probable cause. *See Broaddus v. Campbell*, 911 S.W.2d 281, 283 (Ky. App. 1995) (citing *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981)). "[I]t is axiomatic that where there is a specific finding of probable cause in the underlying criminal action, or where such a finding is made unnecessary by the defendant's agreement or acquiescence, a malicious prosecution cannot be maintained." *Id.* In the instant case, the court has already determined that probable cause existed for Ms. Shackleford's arrest on DUI charges. In fact, her brief concedes that Officer Gutermuth had probable cause to make the stop.[3] With regard to the careless driving charge, the court also finds that there was probable cause underlying that criminal complaint. Furthermore, the Oldham County District Court independently found probable cause when it issued the summons on the careless driving charge, which was instituted at the request of the local prosecutor. Ms. Shackleford has failed to submit any evidence that Officer Gutermuth made any false statements or material omissions to the court or the prosecutor. The existence of probable cause defeats Ms. Shackleford's malicious prosecution claims as well.

For the reasons set forth above, the court will grant the defendants' motion for summary judgment on all claims in this case. A separate order will be entered herein this date in accordance with this opinion.

---

[3] On page 11 of the plaintiff's brief, she notes that her "touching or crossing over the center line of the roadway" may have constituted probable cause for Officer Gutermuth to stop her.